S. Todd Neal (CA Bar #174827 – *Pro Hac Vice*)
E-mail:      todd.neal@procopio.com
Alex G. Brizolis (CA Bar #259634 – *Pro Hac Vice*)
E-mail:      alex.brizolis@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Terry A. Coffing (Nev. Bar No. 4949)
E-mail: tcoffing@maclaw.com
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, NV 89145
Telephone: 702.942.2136
Facsimile: 702.856.8936

Attorneys for Defendants
CannaVEST Corp. a/k/a CV Sciences, Inc.
and Michael J. Mona, Jr.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>CANNAVEST CORP. a/k/a CV SCIENCES, INC. and MICHAEL J. MONA, JR.,<br><br>                    Defendants. | Case No. 2:17-cv-01681-APG-PAL<br><br>**DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Declaration of Michael J. Mona, Jr. Filed Concurrently Herewith*]<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hon. Andrew P. Gordon |

Defendants CannaVEST Corp. and Michael J. Mona, Jr. (collectively, "Defendants") hereby respectfully move the above-captioned court, the Honorable Andrew P. Gordon, presiding, for an order pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), dismissing Plaintiff Securities and Exchange Commission's Complaint.  In the alternative, Defendants move for a more definite statement under Federal Rule of Civil Procedure 12(e).  This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Michael J. Mona, Jr. filed in support along with the exhibits attached thereto, the pleadings and papers filed in this action, any subsequent reply brief, and such further argument and matters as may be offered at the time of the hearing, if any, of this Motion.

DATED: August 21, 2017

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By:  /s/ Terry A. Coffing
       Terry A. Coffing
       S. Todd Neal
       Alex G. Brizolis
       Attorneys for Defendants
       CannaVEST Corp. A/k/a CV Sciences,
       Inc. and Michael J. Mona, Jr.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.     INTRODUCTION ..................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 2

    A.     The Company ................................................................................. 2

    B.     CannaVEST's Acquisition of PhytoSphere and Subsequent Accounting of That Transaction ................................................................................. 2

        1.     The 2013 Forms 10-Q ....................................................... 3

        2.     CannaVEST Engages a New Independent Auditor and Restates Its 2013 Financials ................................................. 4

    C.     The SEC Asserts That CannaVEST's Initial $35 Million Valuation of PhytoSphere Was Correct ........................................................... 5

    D.     The SEC Launches an Investigation into CannaVEST's Accounting of the PhytoSphere Deal ..................................................................... 5

    E.     The Alleged Misstatements and Omissions ................................... 7

III.   ARGUMENT ............................................................................................. 7

    A.     The First Claim For Relief Fails To State A Claim Against Defendants ......... 8

        1.     Defendants Are Not Liable for Violations of Section 10(b) Because They Did Not Make Material Misrepresentations or Omissions ......................................................................... 9

        2.     Defendants Are Not Liable for Violations of Section 10(b) Because the SEC's Scienter Assertions Are Not Plausible ................. 13

        3.     The Section 10(b) Claims Should Be Dismissed Because They Are Not Pleaded with Particularity ........................................... 15

    B.     The Second Through Eighth Causes of Action Fail to State a Claim Against Defendants ...................................................................................... 16

        1.     The Second Cause of Action for Violations of Section 13(a) and Rules 12b-20 and 13a-13 Should Be Dismissed .............. 17

        2.     The Third and Fourth Causes of Action for Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) Should Be Dismissed ......... 18

3.   The Fifth Claim for Relief Alleging that Mr. Mona Violated Section 13(b)(5) and Exchange Act Rule 13b2-1 Should Be Dismissed .................................................................................... 19

4.   The Sixth Claim for Relief Alleging That Mr. Mona Violated Exchange Act Rule 13b2-2 Should Be Dismissed .............................. 21

5.   The Seventh Claim for Relief Against Mr. Mona for Violations of Rule 13a-14 Should Be Dismissed ...................................................... 22

6.   The Eighth Claim for Relief Against Mr. Mona for Violations of Section 304(a) of the Sarbanes-Oxley Act Should Be Dismissed ...... 23

IV.   CONCLUSION ......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ......................................................... 8

*Basic Inc. v. Levinson*
    485 U.S. 224 (1988) ......................................................... 9

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................... 8, 13, 15

*Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) ..................................... 8, 21

*Bodri v. GoPro, Inc.*
    — F Supp. 3d — 2017 WL 1732022 (N.D. Cal. May 1, 2017) ....................... 9

*Branch v. Tunnell*
    14 F.3d 616 (9th Cir. 1998) ............................................... 3

*Cartica Management, LLC v. Corpbanca, S.A.*
    50 F. Supp. 3d 477 (S.D.N.Y. 2014) ..................................... 13

*Destfino v. Reiswig*
    630 F.3d 952 (9th Cir. 2011) ............................................. 16

*Ernst & Ernst v. Hochfelder*
    425 U.S. 185 (1976) ....................................................... 13

*Halperin v. eBanker USA.com, Inc.*
    295 F.3d 352 (2d Cir. 2002) ............................................... 9

*In re Am. Apparel, Inc. S'holder Litig.*
    855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................... 12

*In re Convergent Technologies Sec. Litig.*
    948 F.2d 507 (9th Cir. 1991) .............................................. 9

*In re Cree, Inc. Sec. Litig.*
    No. 1:03CV00549, 2005 WL 1847004 (M.D.N.C. Aug. 2, 2005) ................. 23

*In re Daou Sys., Inc.*
    411 F.3d 1006 (9th Cir. 2005) ........................................ 16, 17

*In re Digimarc Corp. Derivative Litig.*
  549 F.3d 1223 (9th Cir. 2008)........................................................................... 23

*In re FVC.COM Sec. Litig.*
  136 F. Supp. 2d 1031 (N.D. Cal. 2000), *aff'd*, 32 Fed. Appx. 338 (9th Cir.
  2002)................................................................................................................. 15

*In re Leapfrog Enterprise, Inc. Sec. Litig.*
  200 F. Supp. 3d 987 (N.D. Cal. 2016) ............................................................. 11

*In re Metropolitan Sec. Litig.*
  532 F. Supp. 2d 1260 (E.D. Wash. 2007) ........................................................ 15

*In re Oracle Corp. Sec. Litig.*
  627 F.3d 376 (9th Cir. 2010).......................................................................... 9, 11

*In re Silicon Graphics Inc. Sec. Litg.*
  183 F.3d 970 (9th Cir. 1999)............................................................................ 13

*In re Silicon Storage Technology, Inc. Sec. Litig.*
  No. C-05-0295 PJH, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007)................... 22

*In re Splash Tech. Holdings, Inc. Sec. Litig.*
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................... 12

*Kramer v. Time Warner, Inc.*
  937 F.2d 767 (2d Cir. 1991).............................................................................. 3

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*
  540 F.3d 1049 (9th Cir. 2008)........................................................................... 3

*Pareto v. F.D.I.C.*
  139 F.3d 696 (9th Cir. 1998)............................................................................. 8

*Reese v. BP Exploration (Alaska) Inc.*
  643 F.3d 681 (9th Cir. 2011)....................................................................... 12, 13

*Richardson v. Oppenheimer & Co., Inc.*
  No. 2:11–CV–02078–GMN, 2013 WL 1955406 (D. Nev. May 10, 2013) ................... 16

*S.E.C. v. Black*
  No. 04 C 7377, 2008 WL 4394891 (N.D. Ill. Feb. 21, 2008)......................... 22

*S.E.C. v. Coffman*
  No. 06–cv–00088–REB–BNB, 2007 WL 2412808 (D. Colo. Aug. 21,
  2007)................................................................................................................. 17

*S.E.C. v. Dauplaise*
  No. 6:05CV1391 ORL 31KRS, 2006 WL 449175 (M.D. Fla. Feb. 22,
  2006)............................................................................................................ 19

*S.E.C. v. Fraser*
  No. CV-09-00443-PHX-GMS, 2009 WL 2450508 (D. Ariz. Aug 11,
  2009)............................................................................... 15, 16, 17, 18

*S.E.C. v. Leslie*
  No. C 07-3444, 2010 WL 3259375 (N.D. Cal. Aug. 18, 2010)...................................... 19

*S.E.C. v. Mozilo*
  No. CV 09–3994–JFW, 2010 WL 3656068 (C.D. Cal. Sept. 16, 2010)........................ 22

*S.E.C. v Patel*
  No. 07–cv–39–SM, 2008 WL 781914 (D.N.H. Mar. 24, 2008) ...................................... 17

*S.E.C. v. Patel*
  No. 07-CV-39-SM, 2008 WL 782483 (D.N.H. Mar. 24, 2008) ........................ 17, 19, 21

*S.E.C. v. Rana Research, Inc.*
  8 F.3d 1358 (9th Cir. 1993)........................................................................ 8

*S.E.C. v. Rubera*
  350 F.3d 1084 (9th Cir. 2003).................................................................. 13, 14

*S.E.C. v. Shanahan*
  624 F. Supp. 2d 1072 (E.D. Mo. 2008)........................................................ 23

*S.E.C. v. Todd*
  642 F.3d 1207 (9th Cir. 2011)................................................................. 21

*TSC Indus., Inc. v. Northway, Inc.*
  426 U.S. 438 (1976) ............................................................................. 9

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003)................................................................. 8, 16

**FEDERAL STATUTES, REGULATIONS, AND RULES**

17 C.F.R.
  § 240.12b-20................................................................................... 17
  § 240.13a-13................................................................................... 17
  § 240.13b2-1................................................................................... 19
  § 240.13b2-2................................................................................... 21

Federal Rules of Civil Procedure
    Rule 9(b)....................................................................................................... passim
    Rule 12(b)(6) ..................................................................................................... 7

15 United States Code
    § 78m(a) .......................................................................................................... 17
    § 78m(b)(2)(A)................................................................................................ 18
    § 78m(b)(2)(B) ............................................................................................... 18
    § 78m(b)(5) ..................................................................................................... 19
    § 7243(a) ......................................................................................................... 23

18 United States Code § 1350 ................................................................................ 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After years of investigating CannaVEST Corp.'s ("CannaVEST" or the "Company") 2013 accounting of its PhytoSPHERE Systems, LLC ("PhytoSphere") acquisition, and in spite of previously agreeing with how that transaction was publicly reported, the Securities and Exchange Commission ("SEC" or "Plaintiff") has now taken aim at the Company and its CEO, Michael J. Mona, Jr. ("Mr. Mona"), by claiming that the Company's reporting of the transaction evidences a fraud.  The SEC's complaint is based on erroneous and unsustainable allegations of intentional misconduct in a futile effort to plead fraud—a high bar to overcome both on the merits and at the pleading stage, where this case currently sits. At most, Plaintiff's Complaint alleges facts that conceivably establish CannaVEST and Mr. Mona (collectively, "Defendants") acted negligently in filing certain Forms 10-Q for the 2013 fiscal year.  The SEC's Complaint is deficient in multiple incurable respects and it should be dismissed with prejudice as a result.

First, the SEC's securities fraud cause of action based on Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act")[1] and Rule 10b-5(b) thereunder—the true centerpiece of the Complaint—should be dismissed because the Complaint does not allege Defendants made any material misrepresentations or omissions which could give rise to liability.  The SEC relies solely on CannaVEST's Forms 10-Q to support its claims.   These Forms 10-Q contradict any claims of fraud and, in fact, conclusively establish that no reasonable investor could have been duped by their contents. In addition, this claim should also be dismissed because the SEC's scienter allegations are simply not plausible and thus the claim fails to satisfy established Supreme Court precedent.   The first cause of action additionally fails because it does not comport with Federal Rule 9(b)'s particularity standard that requires pleading the "who, what, where, when and how" of the alleged fraudulent conduct.

---

[1] All references herein are to the Exchange Act unless otherwise noted.

The remaining causes of action—which are also subject to Federal Rule 9(b)'s particularity requirement because they are based on an alleged "unified course of fraudulent conduct"—are impermissibly vague and fail as a result. These claims also are not plausible in light of the factual record available at this stage of the proceedings which, it is important to note, Plaintiff has collected through more than two years of intensive investigation. Finally, the seventh and eighth "Claims for Relief" should be dismissed because they are not recognized, independent causes of action. Even if they were, they would still fail as a matter of law.

For these reasons, which are discussed in more detail below, the Complaint should be dismissed without leave to amend.

## II.   FACTUAL BACKGROUND

### A.   The Company

Defendant CannaVEST is a Delaware corporation that maintains a business office in Las Vegas, Nevada. (Cplt. ¶11.) CannaVEST develops, markets and sells products containing the plant extract Cannabidoil ("CBD").[2] CannaVEST also resells raw product to third parties obtained through inventory acquired from PhytoSphere and contracts with various European suppliers. On or about January 5, 2016, CannaVEST changed its name to CV Sciences, Inc. and currently operates under this corporate identity.[3]

Defendant Michael J. Mona, Jr. is CannaVEST's Chief Executive Officer, a position he has held since the Company's inception in November of 2012. (Cplt. ¶12.) Mr. Mona also is the Chairman of CannaVEST's board of directors. (*Id.*)

### B.   CannaVEST's Acquisition of PhytoSphere and Subsequent Accounting of That Transaction

On or about December 15, 2012, CannaVEST entered into a written agreement with PhytoSphere to acquire PhytoSphere's assets in exchange for the stated purchase price of

---

[2] CBD is one of at least 65 cannabinoids found in hemp and is non-psychoactive.

[3] To avoid confusion, the name CannaVEST will be used to refer to the Company throughout this memorandum.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:17-cv-01681-APG-PAL

$35,000,000 to be made in five installments of either cash or common stock shares, as determined in CannaVEST's sole discretion. (Cplt. ¶17.) At the time of the transaction, CannaVEST's stock had very low trading volume and, as such, the price of the stock was highly volatile. (*See* Declaration of Michael J. Mona, Jr. ("Mona Decl."), filed concurrently herewith, at ¶2, Ex. A.) As a result, and in an effort to limit dilution to its stockholders, the Company negotiated a "collar" on the price of CannaVEST stock for all payments made in stock under the PhytoSphere agreement. This "collar" was between $4.50 and $6.00 per share. (Cplt. ¶18.) So, regardless of the market price of the Company's stock at the time of payment, in no event would the value attributed to the stock be less than $4.50 per share or more than $6.00 per share. With this mechanism, the Company could predict, control and limit the amount of stock it would issue in payment for the PhytoSphere assets.

The PhytoSphere acquisition closed on or about January 29, 2013. (*See* Mona Decl., ¶3, Ex. B at p. 10 [CannaVEST Form 10-Q dated May 20, 2013].[4]) On that date, CannaVEST made its first installment payment by issuing to PhytoSphere 900,000 shares of common stock. (*See id.*) Over the course of 2013, CannaVEST completed the acquisition of PhytoSphere in exchange for 5,825,000 million shares of CannaVEST common stock and $950,000 in cash. (*See id.*, ¶9, Ex. H at p. 6 [CannaVEST Form 10-K dated March 28, 2014].)

### 1. The 2013 Forms 10-Q

The Forms 10-Q of which the SEC complains were wholly transparent and compliant with respect to (1) the financing structure of the PhytoSphere acquisition, (2) the

---

[4] The Complaint refers to CannaVEST's SEC filings (*see, e.g.,* Cplt. ¶¶32, 37, 43 and 49) and the authenticity of these documents is not questioned. The Court may therefore consider the May 20, 2013 Form 10-Q and all other SEC filings on this Rule 12(b)(6) motion. *See Branch v. Tunnell*, 14 F.3d 616, 623 (9th Cir. 1998) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). The Court may also take judicial notice of matters of public record in a Rule 12(b)(6) motion, including SEC filings and CannaVEST's stock price and trading volume. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n. 7 (9th Cir. 2008) (judicial notice of stock price history and SEC filings was proper); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (courts may take judicial notice of SEC filings).

---

method for calculating the shares issuable in payment for the PhytoSphere assets, and (3) the significant estimates on valuation used in preparation of the financial statements reporting the PhytoSphere transaction.  In particular, the Company's Forms 10-Q advised the public:

- At the closing, the Company issued Phytosphere 900,000 shares of common stock in satisfaction of its first payment obligation due under the PhytoSPHERE Agreement.  On April 4, 2013, the Company made its second installment payment in the amount of $6,000,000 by issuing 1,000,000 shares of common stock to PhytoSPHERE with a per share price of $6.00, determined by the maximum price set forth in the PhytoSPHERE Agreement.  During the fiscal quarter ended June 30, 2013, the Company paid $750,000 in cash and on July 23, 2013, issued 1,208,334 shares of common stock at a per share price of $6.00, determined by the  maximum price set forth in the PhytoSPHERE Agreement, completing its third installment in the aggregate amount of $8,000,004. During the fiscal quarter ended September 30, 2013, the Company paid $200,000 in cash and on September 20, 2013, issued 1,633,333 shares of common stock at a per share price of $6.00, determined by the maximum price set forth in the PhytoSPHERE Agreement, completing its fourth installment in the aggregate amount of $9,999,998.  (Mona Decl., ¶7, Ex. F [Q3 Form 10-Q] at p.12; *see also id.*, Ex. B [Q1 Form 10-Q] at p.11 and Ex. D [Q2 Form 10-Q] at p.11.)

- The preparation of these financial statements requires us to make **significant estimates and judgments** that affect the reported amounts of assets, liabilities, revenues, expenses and related disclosures of contingent assets and liabilities. […].  Actual results may differ from these estimates under different assumptions or conditions.  ([Q1 Form 10-Q] at p.8 (emphasis added); *see also* [Q2 Form 10-Q] at p.7 and [Q3 Form 10-Q] at p.9.)

### 2. CannaVEST Engages a New Independent Auditor and Restates Its 2013 Financials

In April 2014, and upon the advice of the Company's independent registered public accounting firm, PKF, LLP ("PKF"), CannaVEST restated the financial treatment of the PhytoSphere transaction in its first, second and third quarter Forms 10-Q for 2013.  In these restatements, CannaVEST reported an $8,020,000 million valuation of its PhytoSphere assets based on an independent third party valuation the Company obtained from Vantage Point Advisors, an independent valuation firm.  The Company obtained this independent valuation and restated the value of the PhytoSphere acquisition based upon established accounting guidance (ASC 805-10-25-13 and 14) that provides acquirers of assets with a 12-month period to obtain an independent value of those assets to determine if such value is materially different from the purchase price paid.  In reliance on such guidance (called the

"Measurement Period"), the Company obtained the valuation and restated the value of its PhytoSphere assets based solely on the independent valuation.

CannaVEST filed its restated Forms 10-Q for the first through third quarters of 2013 on or about April 24, 2014 (the "Restatements").  (Cplt. ¶50.)

## C.   The SEC Asserts That CannaVEST's Initial $35 Million Valuation of PhytoSphere was Correct

The Company's dealings with the SEC began immediately after the Restatements were filed (i.e., in April 2014) with an inquiry by the SEC's Division of Corporate Finance ("CorpFin").  In its initial correspondence, the SEC generally inquired about CannaVEST's acquisition of PhytoSphere's assets.  Over the next eight months, CannaVEST and CorpFin exchanged written correspondence and participated in several conference calls, along with PKF, as the Company explained and attempted to justify the Restatements as providing full disclosure and financial transparency.  Notwithstanding the Restatements, CorpFin insisted that the Company restate its financials *again*, to revert back to its initial reporting of a $35 million valuation of the PhytoSphere assets.  In so doing, CorpFin insisted that the correct reporting of the transaction required the Company to look only to the price on the face of the PhytoSphere purchase agreement, as CannaVEST had originally done.

CorpFin specifically noted that, for purposes of reporting the transaction as required under Generally Accepted Accounting Principles ("GAAP") and applicable accounting rules, CannaVEST's subjective valuation of PhytoSphere, including whether the Company believed the acquired PhytoSphere assets were worth $35 million (or even $8 million) in cash, was irrelevant.  Instead, the SEC insisted that the Company was bound to report the asset based upon the purchase price of $35 million.

Ultimately, CorpFin did not press its position and went silent.

## D.   The SEC Launches an Investigation into CannaVEST's Accounting of the PhytoSphere Deal

The next CannaVEST heard from the SEC was in a letter and subpoena from its Division of Enforcement ("Enforcement") in November of 2014.  Over the course of the

DEFENDANTS' MOTION TO DISMISS

next two years, CannaVEST and its officers, including Mr. Mona, complied with various Enforcement document and deposition requests.  Eventually, in a stunning about face, the SEC claimed that the Company and Mr. Mona committed fraud and violated securities laws by initially reporting the PhytoSphere assets at $35 million—**the exact position its sister division (CorpFin) insisted for more than six months was correct under applicable accounting guidelines**.

During its investigation, Enforcement deposed Mr. Mona at length hoping to obtain an admission that he never believed PhytoSphere was worth the $35 million purchase price (even though the SEC, through CorpFin, had previously indicated that Mr. Mona's subjective valuation was irrelevant).  But Mr. Mona would not bite.  Instead, Mr. Mona repeatedly testified that CannaVEST simply could not afford to pay $35 million *in cash* to acquire PhytoSphere but that PhytoSphere would not take a penny less than $35 million to close the deal.  Because CannaVEST was in its infancy at the time and cash was at a premium, the Company funded the acquisition with predominantly common stock—a fact that was disclosed at every step along the way in CannaVEST's 2013 Forms 10-Q.  (*See* Mona Decl., Exs. B, D and F.)  Mr. Mona further testified that he believed PhytoSphere could generate revenues in the $300-$400 million range after five to ten years, which in his view justified PhytoSphere's $35 million price tag and confirmed his belief the assets were worth $35 million.

The SEC was again advised (as was the public in the Company's 2013 Forms 10-Q) that at the time of the PhytoSphere transaction and for much of 2013, CannaVEST was a newly-formed company, operating without a Chief Financial Officer or qualified accounting personnel.  Mr. Mona has no financial background, experience or expertise and he had no individuals sufficiently competent with valuation and accounting issues assisting him or the Company.  As stated in Mr. Mona's testimony, he relied on his outside accounting firm which advised him that he should obtain an independent valuation and, if necessary, restate the value of the PhytoSphere assets within 12 months (i.e., the Measurement Period).  That is precisely what he did.

Notwithstanding that Defendants were at best inexperienced and at worst negligent in their accounting practices for the 2013 fiscal year, the SEC has now filed suit claiming that Defendants acted fraudulently (i.e., intentionally and not simply negligently) in reporting the PhytoSphere assets at $35 million.

**E.      The Alleged Misstatements and Omissions**

The crux of the SEC's case is that CannaVEST and Mr. Mona committed fraud "in making material misrepresentations and/or misleading omissions on CannaVEST's quarterly reports filed with the SEC for its first three quarters of 2013." (Cplt. ¶4.) The SEC has asserted eight different causes of action against CannaVEST, Mr. Mona as a "control person" of CannaVEST and Mr. Mona individually for alleged violations of Sections 10(b) and 13 of the Exchange Act (and associated rules thereunder), and Section 304(a) of the Sarbanes-Oxley Act. At its essence, the Complaint asserts that Defendants somehow acted fraudulently by valuing the PhytoSphere acquisition at $35 million, in accordance with the contractually stated purchase price, because CannaVEST did not pay, or had no intention of paying, $35 million *in cash* for PhytoSphere's assets. (*See* Cplt. ¶¶24-27.)

Notably, the SEC does not allege that Mr. Mona profited directly or indirectly from any of the alleged wrongdoing, or that Defendants knew, or must have been aware, that the alleged misrepresentations and/or omissions would likely mislead the investing public. In fact, Mr. Mona has never sold a single share of CannaVEST stock and did not profit whatsoever. Remarkably, the SEC attempts to satisfy this necessary element of its causes of action by reciting a $10,000 holiday bonus Mr. Mona received along with the holiday bonuses delivered to other employees.

## III.   ARGUMENT

To survive dismissal for failure to state a claim pursuant to Federal Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action" and must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint

must also plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

Allegations of securities fraud are subject to the heightened pleading standard of Federal Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To meet this standard, a plaintiff must allege the "who, what, where, when and how" of the alleged fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  The plaintiff must also "set forth what is false or misleading about a statement, and why it is false."  *Id.*  "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation omitted).

## A.   <u>The First Claim for Relief Fails to State a Claim Against Defendants</u>

To state a claim for relief under Section 10(b), the SEC must plausibly allege that Defendants (1) made a material misrepresentation or omission, (2) with the requisite degree of scienter, (3) in connection with the purchase or sale of a security.  *See S.E.C. v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993).  Because the SEC has failed to adequately allege that Defendants made a material misrepresentation or omission, the scienter allegations are not plausible, and the claim has not been pled with particularity, the first claim for relief should be dismissed.

### 1. Defendants are Not Liable for Violations of Section 10(b) Because They Did Not Make Material Misrepresentations or Omissions

It is well-settled that "a complaint fails to state a claim of securities fraud if *no reasonable investor* could have been misled about the nature of the risk when he invested." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002) (emphasis in original); *Bodri v. GoPro, Inc.*, — F Supp. 3d — 2017 WL 1732022, at *7 (N.D. Cal. May 1, 2017) ("A statement is misleading only if a reasonable investor, reading the statement fairly and in context, would be misled."). To prove a material misrepresentation or omission, a plaintiff "must 'demonstrate that a particular statement, when read in light of all the information then available to the market, or a failure to disclose particular information, conveyed a false or misleading impression.'" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991)). A fact is considered material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

The upshot of the first cause of action appears to be that "Defendants made material misrepresentations and omissions to investors and prospective investors regarding, among other things, the value of the compensation that CannaVEST paid for PhytoSphere and the value of assets that it acquired through the PhytoSphere acquisition." (Cplt. ¶60.) When examined closely, however, nothing could be further from the truth.

First, assuming that the SEC complains of certain misrepresentations in CannaVEST's Forms 10-Q (which is not clear), the Company was truthful in these reportings regarding the value of the compensation it paid for PhytoSphere. In all three of these filings, the Company disclosed the details of how it was financing the PhytoSphere acquisition at every step along the way. For example, in its Q3 Form 10-Q that it filed with the SEC on or about November 14, 2013, CannaVEST disclosed under the conspicuous

heading "**ACQUISITION OF ASSETS OF PHYTOSPHERE SYSTEMS, LLC**":

> At the closing, the Company issued Phytosphere 900,000 shares of common stock in satisfaction of its first payment obligation due under the PhytoSPHERE Agreement. On April 4, 2013, the Company made its second installment payment in the amount of $6,000,000 by issuing 1,000,000 shares of common stock to PhytoSPHERE with a per share price of $6.00, determined by the maximum price set forth in the PhytoSPHERE Agreement. During the fiscal quarter ended June 30, 2013, the Company paid $750,000 in cash and on July 23, 2013, issued 1,208,334 shares of common stock at a per share price of $6.00, determined by the maximum price set forth in the PhytoSPHERE Agreement, completing its third installment in the aggregate amount of $8,000,004. During the fiscal quarter ended September 30, 2013, the Company paid $200,000 in cash and on September 20, 2013, issued 1,633,333 shares of common stock at a per share price of $6.00, determined by the maximum price set forth in the PhytoSPHERE Agreement, completing its fourth installment in the aggregate amount of $9,999,998.

(Mona Decl., Ex. F [Q3 Form 10-Q] at p.12; *see also id.*, Ex. B [Q1 Form 10-Q] at p.11 and Ex. D [Q2 Form 10-Q] at p.11.) The Company never claimed it paid, or was going to pay, $35 million *in cash* for the PhytoSphere assets, nor did it ever claim that the PhytoSphere assets were worth $35 million *in cash*.

Second, the SEC has failed to adequately allege that CannaVEST materially misrepresented anything with respect to the value of the PhytoSphere assets because the Forms 10-Q of which it complains tell a different story. The SEC makes much of the purported fact that CannaVEST never paid $35 million *in cash* for the PhytoSphere assets (Cplt. ¶54) and that CannaVEST would not have paid $35 million *in cash* for the PhytoSphere assets (Cplt. ¶27). Even if true, these allegations are irrelevant. CannaVEST valued the PhtyoSphere assets at $35 million on its Q1 and Q2 Forms 10-Q because of the stated $35 million purchase price on the face of the Purchase and Sale of Assets Agreement. (*See* Q1 Form 10-Q at p.7; Q2 Form 10-Q at p.11.) And in these same filings, the Company specifically acknowledged that it was cash poor and on the verge of shuttering—hardly information that would have been disclosed if the Company or Mr. Mona were trying to deceive investors. Specifically, the Company made clear that:

> As of June 30, 2013, the Company had a cash balance of $76,670. In addition, as of June 30, 2013, the Company had $719,500 available pursuant to the terms of the Roen Ventures line of credit, which has been

our primary source of liquidity. We will need to raise additional funds through the issuance of debt or sale of our securities in order to continue funding our ongoing operations through fiscal year 2013.

(Q2 Form 10-Q at p.15; *see also* Q3 Form 10-Q at p.16); and

Our revenues alone are insufficient to pay our operating expenses and our ability to continue as a going concern is dependent upon our ability to obtain the necessary financing to meet our obligations and repay our current and future liabilities when they become due until such time, if ever, that we are able to generate sufficient revenues to attain profitable operations.

(Q1 Form 10-Q at p.14 (emphasis added); *see also* Q2 Form 10-Q at p.15 and Q3 Form 10-Q at p.17.)

Thus, even if there were something inherently misleading about a $35 million valuation of the PhytoSphere assets (which there is not), the Company's subsequent disclosures in the same Forms 10-Q about CannaVEST's tenuous financial position would have cleared up any confusion. *See In re Leapfrog Enterprise, Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1003-04 (N.D. Cal. 2016) (other statements by defendant "put the allegedly misleading statements ... in context" and "substantially mitigate[d] the potentially misleading nature of the challenged statements"); *In re Oracle Corp. Securities Litig.*, *supra*, 627 F.3d at 390 (a statement or omission "**when read in light of all the information then available to the market**" must be misleading to be actionable. (Emphasis added)).

Finally, the Company acknowledged that it was inexperienced with accounting protocols, that there may be inaccuracies in its reporting and that investors could lose all of their investment:

[T]he Company's management concluded that the Company's internal controls over financial reporting were not effective in that there was a material weakness as of March 31, 2013. A material weakness is a deficiency or combination of deficiencies in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis by the Company's internal controls. The Company's management has identified a material weakness in the effectiveness of internal control over financial reporting related to a shortage of resources in the accounting department required to assure appropriate segregation of duties with employees having appropriate

1    accounting qualifications related to the Company's unique industry
2    accounting and disclosure rules.

3  (Q1 Form 10-Q at p.15; *see also* Q2 Form 10-Q at p.16 (recognizing material weakness

4  over financial reporting as of June 30, 2013) and Q3 Form 10-Q at p.17 (recognizing

5  material weakness over financial reporting as of September 30, 2013));

6    However, we cannot be assured that our working capital needs to develop,
     launch, market and sell our products will be met through the sale of raw
7    product to third parties and the Roen Ventures line of credit. If not, we
     may never be able to achieve profitable operations. In that event, our
8    ability to continue as a going concern would be in jeopardy and **investors
     could lose all of their investment in the Company**.
9

10 (Q1 Form 10-Q at p.14 (emphasis added); *see also* Q2 Form 10-Q at p.13 and Q3 Form 10-

11 Q at p.15); and

12   If we are unable to obtain the financing necessary to support our operations, we may
     be unable to continue as a going concern. In that event, we may be forced to cease
13   operations and **our stockholders could lose their entire investment in the
     Company**.
14

15 (Q1 Form 10-Q at p.14 (emphasis added); *see also* Q2 Form 10-Q at p.15 and Q3 Form 10-

16 Q at p.17.) This is hardly the stuff of securities fraud that would "give a reasonable

17 investor the impression of a state of affairs that differs in a material way from the one that

18 actually exists." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011)

19 (internal quotation omitted). To be sure, the "total mix" of information that CannaVEST

20 made available in its Forms 10-Q torpedoes any claim that it was misleading in any way.

21     Moreover, to the extent the SEC intends to argue that CannaVEST's restated Forms

22 10-Q have any bearing on this analysis, this argument should be rejected. "The fact that the

23 company modified its public stance does not necessarily demonstrate that the [] statements

24 were false when made." *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043,

25 1071-72 (C.D. Cal. 2012); *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F.

26 Supp. 2d 1059, 1072 (N.D. Cal. 2001) ("[T]he complaint must allege that the 'true facts'

27 arose prior to the allegedly misleading statement. This requirement helps guard against

28 pleading fraud by hindsight and helps prevent providing a complaint passageway through

1  the pleading stage merely because it alleges that the allegedly fraudulent statements conflict

2  with the current state of facts." (Citations omitted).).

3          In sum, neither CannaVEST nor Mr. Mona made any misrepresentations or

4  omissions that would mislead a reasonable investor.  Accordingly, the entirety of the SEC's

5  fraud claims—and its Complaint—crumbles, requiring the dismissal of this case as to both

6  Defendants.  *See Reese*, *supra*, 643 F.3d at 694 (because Section 10(b) and Rule 10b-5

7  claims failed to plead a violation, plaintiff's Section 20(a) control person liability claims

8  also failed and were dismissed); *see also Cartica Management, LLC v. Corpbanca, S.A.*, 50

9  F. Supp. 3d 477, 496 (S.D.N.Y. 2014) (same).

10              **2.    Defendants Are Not Liable for Violations of Section 10(b) Because
                        the SEC's Scienter Assertions Are Not Plausible**

11

12          Even if the SEC had sufficiently alleged that Defendants made misrepresentations

13  and/or omissions that were material (which it did not), the first cause of action for fraud

14  should still be dismissed because it fails the plausibility standard under *Twombly*.

15          To establish liability under Section 10(b), the SEC must plead and ultimately prove

16  that Defendants not only made material misstatements or omissions, but that they did so

17  with scienter, "a mental state embracing intent to deceive, manipulate, or defraud."  *Ernst*

18  *& Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).  Although scienter may be established by

19  a showing of recklessness, the standard is exceptionally high:  "[r]ecklessness satisfies the

20  scienter requirement only to the extent that it reflects some degree of **intentional** or

21  **conscious misconduct**."  *S.E.C. v. Rubera*, 350 F.3d 1084, 1094-95 (9th Cir. 2003)

22  (internal quotation omitted; emphasis added) (citing *In re Silicon Graphics Inc. Sec. Litg.*,

23  183 F.3d 970, 977 (9th Cir. 1999)).  The required degree of recklessness cannot involve

24  "merely simple, or even inexcusable negligence" but must constitute "an extreme departure

25  from the standards of ordinary care, and which presents a danger of misleading buyers or

26  sellers that is either known to the defendant or is so obvious that the actor must have been

27  aware of it."  *Id.* at 1094.  Here, the SEC's scienter allegations fall woefully short of this

28  standard.

---

13                                    DEFENDANTS' MOTION TO DISMISS

The SEC asserts generally (under the heading "Defendants' Scienter") that Mr. Mona "knew, or was reckless in not knowing" that:

- there was no basis for the $35 million in assets reported on CannaVEST's balance sheet in the Q1 and Q2 2013 quarterly reports; and

- the Q3 2013 quarterly report failed to disclose that CannaVEST never paid $35 million for PhytoSphere and that the assets were never worth the $35 million stated purchase price.  (Cplt. ¶54.)

The SEC further alleges that Mr. Mona "acted knowingly" when he:

- entered into an agreement to purchase PhytoSphere for $35 million without obtaining any financial information or a valuation and without conducting any due diligence;

- knew that CannaVEST was paying much less than the $35 million stated purchase price for PhytoSphere by paying with CannaVEST shares that Mona knew had little value;

- did not take any steps to determine how much CannaVEST's restricted shares were worth, *i.e.*, how much CannaVEST was paying for PhytoSphere;

- assigned a collar price of $4.50 to $6.00 per share with no basis for this price;

- signed the false Q1 through Q3 2013 Forms 10-Q and signed the false SOX 302 certifications for these Forms 10-Q; and

- signed the false management representation letters to the auditors for Q1 and Q2 2013.  (Cplt. ¶55.)

Conspicuously absent from these allegations—and from the remaining scienter allegations in the Complaint (*see* Cplt. ¶¶56-58)—are any claims that Mr. Mona knew or "must have been aware" that these purported actions would likely mislead investors.  *See S.E.C. v. Rubera*, *supra*, 350 F.3d at 1094.  The factual record belies any such mental state. As discussed above, CannaVEST's 2013 Forms 10-Q disclosed that the Company was not paying cash for PhytoSphere's assets, along with other intricacies of the deal, and the stark reality that the Company might not make it beyond the 2013 fiscal year.  At bottom, a reasonable investor could not have been deceived in light of the full information made

1  available in the Company's Forms 10-Q—a fact that negates any plausible inference of

2  scienter.

3      Moreover, Mr. Mona did not sell any stock in CannaVEST in 2013, nor has the SEC

4  so alleged.  The fact that CannaVEST's CEO "did not sell any of his stock … negates any

5  slight inference of scienter." *In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031, 1039 (N.D.

6  Cal. 2000), *aff'd*, 32 Fed. Appx. 338 (9th Cir. 2002).

7      The SEC has accordingly failed to plead enough facts to state a claim for relief that

8  is "plausible on its face" regarding the required element of scienter.  *Bell Atl. Corp. v.*

9  *Twombly*, *supra*, 550 U.S. at 570.  "The plausibility standard asks far more than a sheer

10  possibility that a defendant has acted willfully.  Where a complaint pleads facts that are

11  merely consistent with a defendant's liability, **it stops short of the line between possibility**

12  **and plausibility of entitlement to relief**." *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMS,

13  2009 WL 2450508, at *5 (D. Ariz. Aug 11, 2009) (internal quotations omitted; emphasis

14  added).  The SEC's first cause of action for violations of Section 10(b) and Rule 10b-5(b)

15  thereunder fails to state a claim for relief and must therefore be dismissed.

16          **3.**        **The Section 10(b) Claims Should Be Dismissed Because They Are**

17                          **Not Pleaded with Particularity**

18      Plaintiff has also failed to satisfy Federal Rule 9(b)'s heightened pleading

19  requirements for fraud claims.

20      The first cause of action realleges and incorporates by reference the entirety of the

21  SEC's factual allegations in paragraphs 1 through 58.  (*See* Cplt. ¶59.)  It then refers to 41

22  paragraphs "among other allegations" which supposedly form the basis for Defendants'

23  material misrepresentations and omissions regarding, "among other things," the value of

24  the compensation CannaVEST paid for PhytoSphere and the value CannaVEST acquired

25  from that transaction.  (Cplt. ¶60.)  But "[w]hat these 'other things' are is left undefined"

26  and "the specifics of the untrue statements and omitted material are not provided." *S.E.C. v.*

27  *Fraser, supra*, 2009 WL 2450508 at *16.  This "shotgun" pleading technique fails Rule

28  9(b)'s threshold.  *See id.* at *14; *In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260, 1279

(E.D. Wash. (2007) ("A complaint is deficient for the purposes of Rule 9(b) when it relies on "shotgun" or "puzzle" pleading."). Like in *Fraser*, the Complaint here:

> … incorporates every factual paragraph into each claim section, and it makes no attempt to lay out which conduct constitutes the violations alleged. Rather, the claims sections simply paraphrase or quote the language of the statutes and rules, leaving Defendants (and the Court) with the task of combing the Complaint and inferring, rightly or wrongly, what specific conduct the SEC intended to assert as a violation.

*Id.*

The SEC then vaguely alleges that:

> by engaging in the conduct above, Defendants, directly **or** indirectly … and by the use of means **or** instrumentalities of interstate commerce, of the mails, **or** of the facilities of a national securities exchange … made untrue statements of a material fact **or** omitted to state a fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

(Cplt. ¶61 (emphasis added).). The first cause of action merely paraphrases the language of the relevant statute and rule in a catchall, either/or fashion without apprising Defendants of the requisite details (i.e., the who, what, where, when and how) to mount a defense. The SEC has also impermissibly "lump[ed] multiple defendants together" without differentiating their allegations. *Richardson v. Oppenheimer & Co., Inc.* No. 2:11–CV–02078–GMN, 2013 WL 1955406, at *5 (D. Nev. May 10, 2013) (quoting *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)).

Plaintiff's Section 10(b) and Rule 10b-5(b) cause of action fails the Rule 9(b) test and it should be dismissed for this reason as well.

## B. The Second Through Eighth Causes of Action Fail to State a Claim Against Defendants

In this Circuit, under the "sounds in fraud" doctrine, Federal Rule 9(b)'s particularity requirement applies to all claims that "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting *Vess v. Ciba-Geigy Corp. USA*, *supra*, 317 F.3d at 1103-04). Rule 9(b)'s heightened pleading standards therefore apply when a complaint

1  alleges a fraudulent course of conduct, when non-fraud claims incorporate by reference

2  allegations of fraud and when there are no allegations of negligence or mistake.  *Id.* at

3  1028; *see also S.E.C. v. Fraser*, No. CV-09-00443, 2009 WL 2450508, at *13 (D. Ariz.

4  Aug. 11, 2009) (all Section 13 claims held to Rule 9(b)'s heightened pleading standard);

5  *S.E.C. v. Patel*, No. 07-CV-39-SM, 2008 WL 782483, at *13 (D.N.H. Mar. 24, 2008)

6  (dismissing Section 13 violations for failure to comply with Rule 9(b)).  That is the case

7  here.

8       The Complaint alleges that Defendants engaged in a fraudulent course of conduct to

9  misstate CannaVEST's Forms 10-Q.  (*See, e.g.,* Cplt. ¶¶32, 37, 44 and 53-57.)  Like *Daou*

10  *Systems*, the Complaint's Section 13 claims incorporate by reference all factual allegations

11  previously alleged.  (*See* Cplt. ¶¶64, 68, 72, 76, 79, 82 and 85.)  "Because the complaint

12  makes a 'wholesale adoption' of the securities fraud allegations for purposes of the

13  Securities Act claims, th[e] court need not 'sift through allegations of fraud in search of

14  some 'lesser included' claim of strict liability[.]'"  *In re Daou Sys.*, 411 F.3d at 1027.  Also

15  like in *Daou Systems*, *Fraser* and *Patel*, the SEC has not alleged that Defendants are liable

16  for negligence or mistake.  Because the Section 13 claims sound in fraud, they are subject

17  to Rule 9(b)'s heightened pleading standard.

18            **1.**    **The Second Cause of Action for Violations of Section 13(a) and**
                    **Rules 12b-20 and 13a-13 Should Be Dismissed**

19

20       Section 13(a) and Exchange Act Rules 12b-20 and 13a-13 describe the requirements

21  imposed on issuers to file various reports with the SEC.  15 U.S.C. § 78m(a); 17 C.F.R. §§

22  240.12b-20 and 240.13a-13.  A "claim based on § 13(a) of the Exchange Act, and rules

23  promulgated thereunder, requires proof of a material misrepresentation or a materially

24  misleading omission."  *S.E.C. v. Coffman*, No. 06–cv–00088–REB–BNB, 2007 WL

25  2412808, at *12 (D. Colo. Aug. 21, 2007); *see also S.E.C. v Patel*, No. 07–cv–39–SM,

26  2008 WL 781914, at *16 (D.N.H. Mar. 24, 2008).  Because Defendants did not make any

27  material misrepresentations or omissions as a matter of law (*see* Section III.A.1, *supra*), the

28  Section 13(a) claim necessarily fails.

The Second Cause of Action also fails to meet Rule 9(b)'s particularity requirement. As explained above, the SEC simply realleges and incorporates 58 paragraphs of factual allegations into this cause of action and then paraphrases or quotes the language of the applicable statutes or rules.   (*See* Cplt. ¶64.)   The SEC then alleges, "**among other allegations**, CannaVEST failed to file with the SEC accurate quarterly reports on Forms 10-Q, and the reports that CannaVEST filed **did not contain material information necessary to make the required statements in the reports not misleading**."   (Cplt. ¶65 (emphasis added).)   These are precisely the kind of vague allegations that the *Fraser* Court found inadequate:   "What these 'other things' are is left undefined […] [and] the specifics of the untrue statements and omitted material are not provided."   *Fraser*, 2009 WL 2450508 at *16.

For these reasons, the Second Cause of Action should be dismissed.

### 2.   The Third and Fourth Causes of Action for Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) Should Be Dismissed

Section 13(b)(2)(A) requires certain issuers to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transaction and dispositions of the assets of the issuer."   15 U.S.C. § 78m(b)(2)(A).   Similarly, Section 13(b)(2)(B) requires an issuer to "devise and maintain a system of internal accounting controls" that meet certain specific standards.   15 U.S.C. § 78m(b)(2)(B).

Like the Second Cause of Action, the Third and Fourth Causes of Action fail Rule 9(b)'s particularity requirement.   The SEC reallages and incorporates by reference all factual allegations in paragraphs 1-58 and then in a conclusory fashion alleges that "**among other allegations**, CannaVEST failed to make and keep books, records and accounts that, in reasonable detail, accurately and fairly reflected CannaVEST's acquisition of PhytoSphere" (Cplt. ¶¶68-69 (emphasis added)) and "**among other allegations**, CannaVEST failed to devise a system of internal accounting controls sufficient to provide reasonable assurances that its **financial statements** were prepared in conformity with GAAP or **any other criteria applicable to such statements**, and to maintain

1    accountability of assets" (Cplt. ¶¶72-73 (emphasis added)).

2        The details of these alleged violations (i.e., the who, what, where, when and how)

3    are left to anyone's guess.  Indeed, the SEC has failed to allege how Defendants' purported

4    material misrepresentations or omissions affected any of the Company's books and records

5    or its internal accounting controls.  *See Patel*, 2008 WL 781914 at *17 ("The act of entering

6    into a transaction is sufficiently attenuated from the process of corporate accounting that

7    mere participation in a transaction that generates revenue that cannot later be recognized

8    under GAAP, without more, cannot be a proximate cause of inaccurate accounting."); *see*

9    *also S.E.C. v. Dauplaise*, No. 6:05CV1391 ORL 31KRS, 2006 WL 449175, at *8 (M.D.

10   Fla. Feb. 22, 2006) (finding failure to state a claim because "the SEC has not alleged how

11   [defendant's] actions affected any of Bio One's books, records or accounts.").  The Third

12   and Fourth causes of action should likewise be dismissed.

13            **3.    The Fifth Claim for Relief Alleging that Mr. Mona Violated**
                      **Section 13(b)(5) and Exchange Act Rule 13b2-1 Should Be**
14                    **Dismissed**

15       Section 13(b)(5) provides that no person "shall knowingly circumvent or knowingly

16   fail to implement a system of internal accounting controls or knowingly falsify any book,

17   record or account subject to [§ 13(b)(2)]."  15 U.S.C. § 78m(b)(5).  Rule 13b2-1 provides

18   that no person "shall directly or indirectly, falsify or cause to be falsified, any book, record

19   or account subject to section 13(b)(2)(A) of the Securities Exchange Act."   17 C.F.R.

20   240.13b2-1.  Critical to these allegations is that Mr. Mona acted *knowingly.  See S.E.C. v.*

21   *Leslie*, No. C 07-3444, 2010 WL 3259375, at *1 (N.D. Cal. Aug. 18, 2010).

22       As explained above, Mr. Mona has no finance or accounting background and the

23   Company did not employ a CFO or accounting department for much of 2013.  Further, the

24   Company acknowledged in its Forms 10-Q that:

25           The preparation of these financial statements requires us to make
             **significant estimates and judgments** that affect the reported amounts of
26           assets, liabilities, revenues, expenses and related disclosures of contingent
             assets and liabilities. […].  Actual results may differ from these estimates
27           under different assumptions or conditions.

28   (Q1 Form 10-Q at p.8 (emphasis added); *see also* Q2 Form 10-Q at p.7 and Q3 Form 10-Q

1  at p.9); and

2

3      [T]he Company's management concluded that the Company's internal controls over financial reporting were not effective in that there was a material weakness as of March 31, 2013.   A material weakness is a

4  deficiency or combination of deficiencies in internal control over financial reporting, such that there is a reasonable possibility that a material

5  misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis by the Company's internal controls.

6  The Company's management has identified a material weakness in the effectiveness of internal control over financial reporting related to a

7  shortage of resources in the accounting department required to assure appropriate segregation of duties with employees having appropriate

8  accounting qualifications related to the Company's unique industry accounting and disclosure rules.

9

10  (Q1 Form 10-Q at p.15; *see also* Q2 Form 10-Q at p.16 (recognizing material weakness

11  over financial reporting as of June 30, 2013) and Q3 Form 10-Q at p.17 (recognizing

12  material weakness over financial reporting as of September 30, 2013).)

13      Nor did Mr. Mona knowingly falsify any book, record or account.   There was

14  nothing false about CannaVEST's reporting $35 million in assets related to the

15  PhytoSphere acquisition.   That the Company did not pay $35 million *in cash* or that the

16  PhytoSphere assets were later appraised at a lower *cash* valuation is immaterial.   Simply

17  valuing PhytoSphere in accordance with the purchase price (whether that purchase price

18  was subsidized by cash, stock or a combination of both) does not amount to a falsification

19  (much less a knowing falsification) of which the SEC complains.   In fact, the SEC (through

20  CorpFin) indicated that reporting the transaction based on the price set forth in the purchase

21  agreement ($35 million) was the correct reporting of the transaction.   In addition, Mr. Mona

22  reported the transaction based on advice of his accounting firm that pursuant to applicable

23  guidance, the Company had 12 months (the Measurement Period) to obtain an independent

24  valuation and restate, if necessary.

25      Based on the above, the SEC does not and cannot plead facts sufficient to raise a

26  plausible inference that Mr. Mona knowingly failed to implement internal accounting

27  controls or that he knowingly falsified any book, record or account.

28      Moreover, the SEC again has failed to plead with requisite specificity what exactly

was falsified.  The SEC simply references paragraphs 13-50 in the complaint "among other allegations" and claims that "Mona falsified a book, record, or account … by falsely having $35 million in assets recorded on CannaVEST's balance sheets related to the PhytoSphere transaction."  (Cplt. ¶77.)  The details of the alleged falsification (which book, record or account, when and where) are left unsaid.

The fifth cause of action against Mr. Mona should therefore be dismissed.

### 4.   The Sixth Claim for Relief Alleging That Mr. Mona Violated Exchange Act Rule 13b2-2 Should Be Dismissed

Exchange Act Rule 13b2-2 prohibits a director or officer of an issuer from directly or indirectly making a materially false or misleading statement or omission to an accountant in connection with any required audit or certain public filings.  *See* 17 C.F.R. 240.13b2-2.  Critically, however, "the rule does not impose upon directors or officers a duty to report information to accountants; it merely requires them not to make false statements to accountants and not to omit information from statements to accountants when such an omission would result in a misleading statement."  *Patel*, 2008 WL 781914 at *15.

Here, the SEC has not alleged that Mr. Mona made any false statements or omissions knowing that they were false.  That alone is sufficient grounds to dismiss this cause of action.  *See S.E.C. v. Todd*, 642 F.3d 1207, 1224 (9th Cir. 2011) ("to be directly liable for improperly reporting to accountants [defendant] had to have knowledge that he was signing a false management representation letter").

In addition, like its other claims, the SEC has failed to adequately plead this cause of action and to apprise Mr. Mona of what exactly he did wrong.  The SEC alleges that Mr. Mona "directly **or** indirectly, made **or** caused to made materially false **or** misleading statements **or** omissions to an accountant in connection with a required audit, review, **or** examination of the financial statements of an issuer, **or** the preparation **or** filing of any document **or** report required to be filed with the SEC …."  (Cplt. ¶80 (emphasis added).)  The SEC's either/or pleading style makes it impossible to discern the details of what it is Mr. Mona allegedly did to subject him to liability under Rule 13b2-2.  *See Bly-Magee v.*

1 *California*, *supra*, 236 F.3d at 1019.

2 The Sixth Claim for Relief should therefore be dismissed for each of these

3 independent reasons.

4     **5.**     **The Seventh Claim for Relief Against Mr. Mona for Violations of**

5     **Rule 13a-14 Should Be Dismissed**

6 Rule 13a-14 requires that certain reports filed with the SEC, including Forms 10-Q,

7 must be certified to fairly present, in all material respects, the financial condition and

8 results of operations of the issuer, as required under 18 U.S.C § 1350. Importantly, the

9 certifications attest that "**[b]ased on [the signatory's] knowledge**, the financial statements,

10 and other financial information included in this report, fairly present in all material respects

11 the financial condition, results of operations and cash flows of the registrant as of, and for,

12 the periods presented in this report." (*See* Mona Decl. Exs. C [Q1 Form 10-Q

13 Certification], E [Q2 Form 10-Q Certification] and G [Q3 Form 10Q Certification]

14 (emphasis added).)

15 As an initial matter, at least two courts—including one in this Circuit—have

16 concluded that the SEC may not bring an independent cause of action for a Rule 13a-14

17 violation. *See S.E.C. v. Mozilo*, No. CV 09–3994–JFW (MANx), 2010 WL 3656068, at

18 \*21 (C.D. Cal. Sept. 16, 2010) (granting summary judgment on Rule 13a-14 claim because

19 "a false Sarbanes-Oxley certification does not state an independent violation of the

20 securities laws"); *S.E.C. v. Black*, No. 04 C 7377, 2008 WL 4394891, at \*16-17 (N.D. Ill.

21 Feb. 21, 2008) (dismissing Rule 13a-14 cause of action for failure to state a claim); *see also*

22 *In re Silicon Storage Technology, Inc. Sec. Litig.*, No. C-05-0295 PJH, 2007 WL 760535, at

23 \*17-18 (N.D. Cal. Mar. 9, 2007) (dismissing false certification cause of action for failure to

24 state a claim).

25 Even if the SEC could properly assert such a claim, it would still fail. The SEC has

26 not specifically alleged in this cause of action that Mr. Mona presented an untrue statement

27 of material fact or that he inaccurately presented the Company's financial condition. (*See*

28 Cplt. ¶¶82-84.) Regardless, as discussed at length above (*see* Section III.A.1, *supra*), the

2013 Forms 10-Q did fairly present the financial condition of the Company, and certainly did so to the best of Mr. Mona's knowledge at the time.

The Seventh Claim for Relief should be dismissed for each of these reasons.

**6.      The Eighth Claim for Relief Against Mr. Mona for Violations of Section 304(a) of the Sarbanes-Oxley Act Should Be Dismissed**

Section 304(a) of the Sarbanes-Oxley Act ("SOX 304") requires a CEO or CFO of an issuer to reimburse the issuer for any bonus or other incentive-based or equity-based compensation received by that person if the issuer **is required** to prepare an accounting restatement due to the material noncompliance of the issuer, **as a result of misconduct**, with any financial reporting requirement under the securities laws.  *See* 15 U.S.C. § 7243(a).

This claim fails out of the gate because the Ninth Circuit has held that "there is no private right of action under section 304 of the Sarbanes–Oxley Act …."  *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1238 (9th Cir. 2008).  The eighth cause of action should be dismissed for this reason alone.

In addition, no authority (including the SEC) "required" CannaVEST to restate its 2013 Forms 10-Q, nor does the SEC so allege; CannaVEST restated on its own accord. Liability under SOX 304 can therefore not attach.  *See S.E.C. v. Shanahan*, 624 F. Supp. 2d 1072, 1078 (E.D. Mo. 2008) ("the ordinary, contemporary, common meaning of Section 304 is that, before penalties may be imposed, an issuer must be compelled or ordered to prepare a financial restatement, and must actually file the restatement"); *see also In re Cree, Inc. Sec. Litig.*, No. 1:03CV00549, 2005 WL 1847004, at *15 (M.D.N.C. Aug. 2, 2005) (dismissing SOX 304 claim because the "Company was not required by any authority to issue" a restatement).

Finally, the SEC has failed to plead a plausible occurrence of fraud—the centerpiece of its Complaint.  (*See* Sections III.A.1 and 2, *supra*).  Thus, any restatement "cannot be said to have been prepared as the result of noncompliance resulting from misconduct."  *In re Cree, Inc. Sec. Litig.*, *supra*, at *15.

1  The Eighth Claim for Relief should be dismissed for all three of these separate

2  reasons.

3  **IV.    CONCLUSION**

4  For all of the foregoing reasons, the Complaint should be dismissed as to both

5  Defendants.  In the alternative, the Court should order a more definite statement as to all

6  claims alleged in the Complaint.

7

8  DATED:  August 21, 2017                    PROCOPIO, CORY, HARGREAVES &
                                              SAVITCH LLP
9

10
                                       By:  /s/ *Terry A. Coffing*
11                                          Terry A. Coffing
                                            S. Todd Neal
12                                          Alex G. Brizolis
                                            Attorneys for Defendants
13                                          CannaVEST Corp. A/k/a CV Sciences,
                                            Inc. and Michael J. Mona, Jr.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28