S. Todd Neal (CA Bar No. 174827 – *Pro Hac Vice*)
E-mail: todd.neal@procopio.com
Alex G. Brizolis (CA Bar No. 259634 – *Pro Hac Vice*)
E-mail: alex.brizolis@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA  92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Terry A. Coffing (Nev. Bar No. 4949)
E-mail: tcoffing@maclaw.com
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, NV 89145
Telephone: 702.942.2136
Facsimile: 702.856.8936

Attorneys for Defendants
CannaVEST Corp. a/k/a CV Sciences, Inc.
and Michael J. Mona, Jr.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CANNAVEST CORP. a/k/a CV SCIENCES, INC. and MICHAEL J. MONA, JR.,<br><br>　　　　Defendants. | Case No. 2:17-cv-01681-APG-PAL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hon. Andrew P. Gordon |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. THE COMPLAINT SHOULD BE DISMISSED IN FULL ................................ 2

    A. The Section 10(b) Claims Fail .................................................................. 2

        1. The Alleged Misrepresentations Were Not False ......................... 2

        2. Even If False, The Alleged Misrepresentations Were Not Material ..... 3

        3. The SEC's Scienter Allegations Are Not Plausible ............................. 5

        4. The Section 10(b) Claims Fail Federal Rule 9(b)'s Particularity Requirement ......................................................................... 6

    B. The SEC's Remaining Causes Of Action Should Be Dismissed ..................... 7

        1. The Section 13(a) and Rules 12b-20 and 13a-13 Claims Should Be Dismissed ......................................................................... 8

        2. The Sections 13(b)(2)(A) and 13(b)(2)(B) Claims Should Be Dismissed ......................................................................... 8

        3. The Section 13(b)(5) and Rule 13b2-1 Claims Should Be Dismissed ......................................................................... 9

        4. The Rule 13b2-2 Claim Should Be Dismissed .................................. 10

        5. The Rule 13a-14 Claim Should Be Dismissed .................................. 10

        6. The SOX 304 Claim Should Be Dismissed ....................................... 11

III. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*
    No. CV1403053MWFVBKX, 2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) .......................................................................................................... 6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................................ 5

*Basic Inc. v. Levinson*
    485 U.S. 224 (1998) ............................................................................................ 3

*Bina v. Abraxas Med. Sols.*
    No. SACV121030JVSANX, 2012 WL 12892745 (C.D. Cal. Dec. 19, 2012) .......................................................................................................... 6

*Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) .......................................................................... 10

*Fire & Police Pension Ass'n of Colo. v. Simon*
    778 F.3d 228 (1st Cir. 2015) .............................................................................. 5

*In re Cree, Inc. Sec. Litig.*
    2005 WL 1847004 (M.D.N.C. Aug. 2, 2005) ................................................. 12

*In re Digimarc Corp. Derivative Litig.*
    549 F.3d 1223 (9th Cir. 2008) .......................................................................... 11

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................. 6

*In re Oracle Corp. Securities Litig.*
    627 F.3d 376 (9th Cir. 2010) .............................................................................. 5

*In re Wet Seal, Inc. Sec. Litig.*
    518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................. 6

*In re Worlds of Wonder Sec. Litig.*
    35 F.3d 1407 (9th Cir. 1994) ........................................................................ 5, 10

*Kogan v. Robinson*
    432 F. Supp. 2d 1075 (S.D. Cal. 2006) ............................................................ 11

*L.L. Capital Partners, L.P. v. Rockefeller Center Properties, Inc.*
   921 F. Supp. 1174 (S.D.N.Y. 1996) .................................................................................... 3

*NYSA Series Tr. v. ESPSCO Syracuse, LLC*
   No. 5:14-CV-1089, 2015 WL 457691 (N.D.N.Y. Feb. 3, 2015) ................................ 4, 10

*Olkey v. Hyperion 1999 Term Trust, Inc.*
   98 F.3d 2 (2d Cir. 1996) ...................................................................................................... 4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*
   135 S.Ct. 1318 (2015) ......................................................................................................... 3

*Owens v. Jastrow*
   789 F.3d 529 (5th Cir. 2015) ......................................................................................... 5, 10

*Pareto v. F.D.I.C.*
   139 F.3d 696 (9th Cir. 1998) .............................................................................................. 8

*Pireli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l*
   *Mortgage Ass'n v. Raines*
   534 F.3d 779 (D.C. Cir. 2008) ......................................................................................... 11

*S.E.C. v. First Jersey Securities, Inc.*
   101 F.3d 1450 (2d Cir. 1996) ........................................................................................... 12

*S.E.C. v. Fraser*
   2009 WL 2450508 (D. Ariz. 2009) ........................................................................... 6, 7, 9

*S.E.C. v. Jasper*
   883 F. Supp. 2d 915 (N.D. Cal. 2010) ............................................................................. 11

*S.E.C. v. Jensen*
   835 F.3d 1100 (9th Cir. 2016) ......................................................................................... 11

*S.E.C. v. Price Waterhouse*
   797 F. Supp. 1217 (S.D.N.Y. 1992) ................................................................................... 9

*S.E.C. v. Retail Pro, Inc.*
   673 F. Supp. 2d 1108 (S.D. Cal. 2009) ............................................................................. 9

*S.E.C. v. Rubera*
   350 F.3d 1084 (9th Cir. 2003) ............................................................................................ 5

*S.E.C. v. Shanahan*
   624 F. Supp. 2d 1072 (E.D. Mo. 2008) ........................................................................... 12

*Santa Fe Industries, Inc. v. Green*
    430 U.S. 462 (1977) ................................................................................................... 5

**FEDERAL STATUTES, REGULATIONS, AND RULES**

Federal Rule 9(b) ................................................................................................... 7, 8

## I. INTRODUCTION

Defendants CannaVEST Corp. ("CannaVEST" or the "Company") and Michael J. Mona, Jr. ("Mr. Mona") did not unlawfully report the Company's assets, nor did they misstate the consideration paid in the PhytoSphere acquisition. They did not misrepresent anything in the Company's Forms 10-Q or other written disclosures. Even if they had, they certainly did not do so knowingly or recklessly. Although the SEC chooses to ignore it, the fact is that the Company's $35 million reporting of PhytoSphere assets was not pulled from thin air, nor is it the machinations of Mr. Mona. This figure simply represented the purchase price on the face of the PhytoSphere Purchase and Sale of Assets Agreement.

Emblematic of the SEC's strained effort to state a viable claim is its false contention that Defendants' Motion mischaracterizes the position taken by the SEC's Division of Corporation Finance ("CorpFin"). The SEC claims—without support—that "[CorpFin] indicated that CannaVEST should have taken an **immediate impairment** of $27 million on its balance sheet and income statement, which would have resulted in a reported value for the PhytoSphere assets of $8 million on CannaVEST's balance sheet." (Opp. at 1, fn. 1 (emphasis added).) But as correctly alleged in paragraph 42 of the Complaint, CannaVEST obtained the valuation in October 2013, appraising the PhytoSphere assets at approximately $8 million. Because the PhytoSphere acquisition closed on January 29, 2013, at the time it would have been impossible for CannaVEST to immediately impair those assets. The SEC's statement therefore makes no sense—CorpFin could not have contended that CannaVEST should have immediately impaired the assets based on an independent valuation that did not yet exist.

In fact, the Company obtained the valuation in a timely manner pursuant to the 12-month "Measurement Period" prescribed by the applicable accounting rules (ASC805-10-25-13 and 14). And once it obtained the valuation, it immediately made an impairment, which negates any reasonable interpretation that Defendants committed fraud in their initial reporting of assets or subsequent reporting of an impairment. The SEC is forced to muddy this issue because the entire premise of its case conflicts with CorpFin's assertion that

1

CannaVEST's initial $35 million valuation of PhytoSphere was correct.

More importantly, no reasonable investor could have possibly been misled by any of the alleged wrongdoing—another point that the SEC completely ignores in its Opposition. Because this showing is the linchpin of a securities fraud claim, the entire Complaint collapses and must be dismissed with prejudice.

In addition to these fatal flaws—which on their own invalidate all eight causes of action—the Complaint does not comply with Federal Rule 9(b)'s particularity requirements and should be dismissed on this independent basis as well. The Motion should be granted.

## II. THE COMPLAINT SHOULD BE DISMISSED IN FULL

### A. The Section 10(b) Claims Fail

The SEC's Section 10(b) claim should be dismissed for a number of reasons: (1) the alleged misrepresentations were not false; (2) the alleged misrepresentations were not material; (3) the scienter allegations are not plausible; and (4) the claims are not pleaded with particularity. Because the remaining causes of action are based on the predicate Section 10(b) violation, the entire Complaint should be dismissed with prejudice.

#### 1. The Alleged Misrepresentations Were Not False

There was nothing "false" about CannaVEST's reporting of $35 million in assets related to the PhytoSphere acquisition. (Opp. at 7.) As Defendants explained in their Motion—which the SEC does not address in its Opposition—CannaVEST reported the PhytoSphere assets at $35 million because that was the stated purchase price on the face of the PhytoSphere Purchase and Sale of Assets Agreement. (Mot. at 10.)[1] Once the Company had an independent valuation performed, it recorded an impairment on its Form 10-Q. (*See* Declaration of Michael J. Mona, Jr. in Support of Defendants' Motion to Dismiss [Dkt. 16] ("Mona Decl.") Ex. F [Dkt. 16-6].)

There was also nothing false about the reported value of the compensation paid for

---

[1] Defendants also note that on a September 19, 2014 conference call with the SEC's Division of Corporate Finance, SEC staff member Kevin Woody explicitly informed the Company's officers that the Company's original $35 million valuation of the PhytoSphere assets (i.e., the entire basis for this Complaint) was correct because that was the stated purchase price in the acquisition agreement. The SEC's Enforcement division was not a participant on that call.

the PhytoSphere assets. In addition to cash, CannaVEST paid for the PhytoSphere assets with CannaVEST stock that *the two parties agreed* would be valued between $4.50 and $6.00 per share. (*See, e.g.*, Q2 Form 10Q [Dkt. 16-4] at p.11.) This was not a range that Mr. Mona "set arbitrarily" on his own (Opp. at 7.) This is obvious given the fact that it was a key term of an arm's length transaction. By their very nature, such agreements do not allow one party to "arbitrarily" set terms.

### 2. Even If False, The Alleged Misrepresentations Were Not Material

The SEC completely ignores the fact that the alleged misrepresentations regarding the value of compensation CannaVEST paid, and the value of what it received in relation to the PhytoSphere deal, were immaterial, i.e., that no reasonable investor could have been misled by the subject reporting. (Mot. at 9-13.) Instead, the SEC deflects by rehashing its claims that Mr. Mona purportedly set an arbitrary collar for the CannaVEST shares that were transferred to PhytoSphere, that he would not have paid $35 million *in cash* for PhytoSphere, and that he believed that a $35 million valuation of PhytoSphere was "substantially inflated." (Opp. at 7.) But these purported subjective beliefs of Mr. Mona's (which are untrue) are immaterial. *See L.L. Capital Partners, L.P. v. Rockefeller Center Properties, Inc.*, 921 F. Supp. 1174, 1179-80 (S.D.N.Y. 1996) (dismissing securities fraud complaint because company's "subjective worries, concerns, and beliefs were not a matter requiring disclosure.").

The SEC also does not explain why any of the purportedly "false" valuations mattered, and in particular, why they mattered to the investing public in light of the abundant qualifying disclosures in the Forms 10-Q. Even if the value of the PhytoSphere assets was overstated (which Defendants deny), that certainly did not "significantly alter the 'total mix' of information [that CannaVEST] made available[]" to the public. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1998).

Thus, as a matter of law, the market was not misled. "[A]n investor reads each statement within [an SEC document], whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information."

3

1 *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S.Ct. 1318, 1330 (2015). It is not sufficient to state a claim when the plaintiff merely "seek[s] to have all of the cautionary language disregarded as boilerplate, [when] it is too prominent and specific to be disregarded." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 6 (2d Cir. 1996) (affirming dismissal of securities fraud claims). The Court should decline the SEC's invitation to evaluate the PhytoSphere valuation in a vacuum.

CannaVEST disclosed far more than simply a "boilerplate statement that the company is in a poor financial situation." (Opp. at 8.) The Company specifically disclosed to the public that it was making "significant estimates" regarding, among other things, "the reported amounts of assets" (Q1 Form 10-Q [Dkt. 16-2] at p.8) and that there was a "reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis by the Company's internal controls." (*Id.* at p.15; Mot. at 11-12.) The Company conspicuously and clearly disclosed to the public that even if the $35 million purchase price for the PhytoSphere assets proved to be higher than the fair market value under Generally Accepted Accounting Principles (GAAP), it would have to restate its financials; thus no deception. *See NYSA Series Tr. v. ESPSCO Syracuse, LLC,* No. 5:14-CV-1089, 2015 WL 457691, at *5 (N.D.N.Y. Feb. 3, 2015) ("[I]n light of the explicit cautionary language … much of which addresses the very undisclosed risks of which plaintiffs complain, plaintiffs cannot now claim to have been unaware of the potential investment risks.").

In addition, as discussed in the Motion, CannaVEST was an open book and reported details about its cash balance ($76,670), the remaining funds under the Roen Ventures line of credit ($719,500) (which the Company admitted was its "primary source of liquidity"), that its "revenues alone are insufficient to pay [its] operating expenses" and that it "may be forced to cease operations." (Mot. at 10-12, quoting Q2 Form 10-Q [Dkt. 16-4] and Q1 Form 10Q [Dkt. 16-2].)

Finally, CannaVEST's low to non-existent trading volume between May 20, 2013 (when it filed its Q1 Form 10-Q) through November 14, 2013 (when it recorded its

4

impairment on the Q3 Form 10-Q) only confirms that the public was not deceived and did not find any of the purportedly "false" representations material. (*See* Mona Decl., Ex. A [Dkt. 16-1].) During this almost six month span, there were **86 days of zero trading** and only two days where trading peaked at 1,000 shares. (*Id.*)

### 3. The SEC's Scienter Allegations Are Not Plausible

Contrary to the SEC's position, Defendants have not argued that the SEC cannot allege scienter generally as a simple matter of pleading. But the SEC cannot survive a motion to dismiss when general allegations of scienter are implausible in light of the facts currently available to the Court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). No such reasonable inference can be drawn here.

The SEC hangs its hat on allegations that Mr. Mona knew or was reckless in not knowing that there was no basis for the $35 million valuation of PhytoSphere and that CannaVEST did not pay $35 million to acquire those assets. (Opp. at 10.) As detailed above and in the Motion, the multiple disclosures Defendants made in CannaVEST's Forms 10-Q make a showing of intent to defraud implausible. There was no danger that a reasonable investor could have been deceived by any of the valuations the SEC complains of when read in context with the totality of information available to the market at the time. *See In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (statement or omission must be misleading "when read in light of all the information then available to the market"); *see also Fire & Police Pension Ass'n of Colo. v. Simon,* 778 F.3d 228, 240 (1st Cir. 2015) ("[T]he materiality and scienter inquiries are linked."). Allegations of Mr. Mona's scienter simply do not hold up against this backdrop. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) (detailed risk disclosure negates inference of scienter); *Owens v. Jastrow*, 789 F.3d 529, 541 (5th Cir. 2015) (disclosure of red flags and candidness about uncertainty neutralized any scienter inference). Simply put, there was no "danger of misleading buyers or sellers" that is required even under a reckless mental state. *S.E.C. v. Rubera*, 350 F.3d 1084, 1094 (9th Cir. 2003); *see also Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473-74 (1977) (conduct that is neither deceptive nor manipulative

5

cannot state a claim for violating Section 10(b) or Rule 10b-5).

The SEC also ignores the fact that Mr. Mona did not profit from the alleged misrepresentations, which additionally negates any inference of scienter. (*See* Mot. at 15); *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1165 (C.D. Cal. 2007) ("[B]ecause Plaintiffs have not alleged facts that would square their motive theory with economic reality, they do not adequately allege fraudulent intent …."). Even if Mr. Mona exercised poor judgment with respect to the PhytoSphere acquisition, that is not sufficient. *See In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1094 (C.D. Cal. 2008) (management's poor judgment or even incompetence are not actionable deceit under federal securities laws).

### 4. The Section 10(b) Claims Fail Federal Rule 9(b)'s Particularity Requirement

The SEC's reliance on *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV1403053MWFVBKX, 2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) only proves Defendants' point that the pleading is deficient. In *Almont*, the Court described a third instance of a "shotgun" pleading where "there are no specific factual allegations—**beyond the ubiquitous incorporation clause**—described in the counts of a multi-count complaint." *Id.* (citation omitted, emphasis added). That is the case here. The SEC has simply incorporated by reference every previous paragraph (Cplt. ¶59), realleged the contents of 41 paragraphs (*id.* ¶60) and then alleged that "[b]y engaging in the conduct described above" Defendants have violated the relevant statute, which the SEC quotes or paraphrases in full (*id.* ¶¶61-62). That is not sufficient. *See Bina v. Abraxas Med. Sols.*, No. SACV121030JVSANX, 2012 WL 12892745, at *5 (C.D. Cal. Dec. 19, 2012) ("Essentially, Plaintiffs quote the statute. This is insufficient to satisfy Rule 9(b)'s heightened pleading standard."). Moreover, in *Almont*, the court found that the complaint was not a "shotgun" pleading because "after the incorporation clause of each count, the [complaint] has multiple paragraphs that provide additional count-specific factual allegations." *Almont* at *5. Not so here. The SEC's Complaint is much more akin to the

6

invalid complaint in *S.E.C. v. Fraser* (*see* Mot. at 15-16) than the one at issue in *Almont*.

Contrary to Plaintiff's contention, the Complaint at paragraphs 47-50 does not identify the nature of any alleged material omissions. (Opp. at 11.) Those paragraphs simply discuss allegations related to CannaVEST's 2013 Form 10-K and its restated Forms 10-Q for the 2013 fiscal year; they do not describe with any degree of particularity what CannaVEST or Mr. Mona allegedly failed to disclose at any time and why it was important. To the extent the SEC claims that Defendants failed to disclose that the actual value of the PhytoSphere assets was $8 million, this argument fails because the Company did not obtain the independent valuation until *after* it published its Q2 Form 10-Q (*see* Cplt. ¶42); it then promptly amended its financials in the Q3 Form 10-Q to reflect this change. (*See* Q3 Form 10-Q [Dkt. 16-6].)

Finally, the SEC's claim that the Complaint "specifically alleges that Defendants are liable for violations of the antifraud provisions because they made misrepresentations and omissions …" (Opp. at 12) is precisely the problem. Like in *Fraser*, there is no attempt in this count to parse out which defendant did what. Federal Rule 9(b) requires the SEC to "differentiate [its] allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Fraser*, 2009 WL 2450508 at *6. The SEC has not done so here.

For the foregoing reasons, the SEC's First Cause of Action for violations of Section 10(b) and Rule 10b-5(b) should be dismissed with prejudice as a matter of law. Alternatively, the SEC should be ordered to re-plead this claim to comply with Federal Rule 9(b).

**B.     The SEC's Remaining Causes Of Action Should Be Dismissed**

Because (1) the SEC's securities fraud claim fails as a matter of law, and (2) its remaining claims for violations of Section 13 (and associated Rules thereunder) and the Sarbanes-Oxley Act are born out of the same alleged fraudulent misconduct, these remaining claims cannot survive.[2] They are also deficient for independent reasons.

---

[2] The SEC has also conceded that Federal Rule 9(b)'s heightened pleading requirement applies to

### 1. The Section 13(a) and Rules 12b-20 and 13a-13 Claims Should Be Dismissed

As discussed above (*see* Section II.A.1 and 2) and in the Motion (Mot. at 9-13), Defendants did not make any material misrepresentations. The SEC contends that this argument is refuted by the "plain language of the complaint …" (Opp. at 13), but "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Notwithstanding what the SEC has alleged in its Complaint, the facts currently available to the Court—i.e., CannaVEST's various Forms 10-Q, its trading history during this time (*see* Dkt. Nos. 16-2, 16-4, 16-6 and 16-1) and that Mr. Mona did not profit from the alleged wrongdoing[3]—tell a different story.

The SEC's argument that it has complied with Federal Rule 9(b) is also unavailing. Apart from summarily dismissing *Fraser*, the SEC offers no contrary authority where a court has upheld a similar cause of action pled as vaguely as this one. For these reasons and for those discussed in the Motion (*see* Mot. at 17-18), the Second Cause of Action should be dismissed.

### 2. The Sections 13(b)(2)(A) and 13(b)(2)(B) Claims Should Be Dismissed

Because Defendants did not act fraudulently with respect to the valuation of PhytoSphere, they could not have violated Sections 13(b)(2)(A) or 13(b)(2)(B) with the degree of intent the SEC has alleged. While scienter may not be specifically required for a Section 13(b)(2)(A) or 13(b)(2)(B) violation in the abstract, the SEC has not alleged a lesser mental state here. The SEC alleges that CannaVEST's books and records falsely reported $35 million in assets related to the PhytoSphere deal, that Mr. Mona signed certain certifications and letters specifically representing that no material transactions had been improperly recorded, and that CannaVEST knowingly failed to implement a system of

---

these "non-fraud claims" (Opp. at 13) by arguing that Rule 9(b) has been satisfied. *See Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).
[3] The SEC has not alleged in the Complaint that Mr. Mona profited from any of the purported misconduct at issue, nor has the SEC so argued anywhere in its Opposition.

internal accounting controls resulting in a substantial overstatement of assets. (Opp. at 15.) The SEC admits that these claims are based on Mr. Mona's *knowledge* or *recklessness in not knowing* that "there was no basis for the $35 million valuation of the assets related to the PhytoSphere acquisition, and that the $35 million valuation, which was reported on CannaVEST's balance sheets, was 'substantially inflated.'" (*Id.*)

However, the many disclosures CannaVEST made in its Form 10-Qs with respect to its anticipated accounting deficiencies belie any fraudulent intent with respect to the Company's duty to accurately maintain books and records and to devise a system of internal accounting controls. (*See*, *e.g.*, Q1 Form 10Q at pp.8 and 15, Q2 Form 10-Q at pp.7 and 16 and Q3 Form-10Q at pp.9 and 17.) That Defendants may have been negligent or mistaken in adhering to certain accounting protocols is of no moment here in light of the SEC's claims of intentional or reckless conduct. *See S.E.C. v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992) (mere noncompliance with GAAP is not sufficient to maintain a claim for securities fraud).

Finally, these claims are not pled with sufficient particularity to withstand scrutiny. Like many of its other claims, the SEC simply incorporates by reference nearly forty paragraphs "among other allegations" not identified and then declares that Defendants have violated the relevant, paraphrased statutes. (*See* Cplt. ¶¶69 and 73.) That is not sufficient. *See* Mot. at 19; *Fraser* at *14.

### 3. The Section 13(b)(5) and Rule 13b2-1 Claims Should Be Dismissed

Like the other Section 13 claims, the SEC does not claim here that Mr. Mona acted with a lesser mental state other than scienter. Because the SEC's fraud claims fail (and because its scienter allegations are not plausible), this claim should also be dismissed.

*S.E.C. v. Retail Pro, Inc.*, 673 F. Supp. 2d 1108 (S.D. Cal. 2009) is readily distinguishable. There, the Court granted the SEC's motion for summary judgment on a Section 13(b)(5) claim because the defendant testified that he understood the possibility of a potential fraud before he signed management representations letters to auditors stating that he had no such knowledge. *Id.* at 1142. Mr. Mona did the opposite here.

Even if CannaVEST falsely reported anything on its books or records (which Defendants deny, (*see* Section II.A.1, *supra*; Mot. at 20), the Forms 10-Q are replete with disclosures that prove Mr. Mona did not act knowingly. Unlike *Retail Pro*, where the CFO clearly knew of the potential fraud before he signed representations to auditors claiming otherwise, Mr. Mona (through CannaVEST's Forms 10-Q) clearly and conspicuously disclosed that there may be errors on the Company's books. (*See*, *e.g.*, Q1 Form 10Q at pp.8 and 15, Q2 Form 10-Q at pp.7 and 16 and Q3 Form-10Q at pp.9 and 17.) Unlike *Retail Pro*, Mr. Mona was not hiding anything from the Company's auditors; on the contrary, he made these risks explicitly known, not only to auditors but to the public at large. These disclosures negate the inference that Mr. Mona acted intentionally or recklessly in violating the law. *See NYSA Series Tr. v. ESPSCO Syracuse, LLC, supra*, 2015 WL 457691 at *5; *In re Worlds of Wonder Sec. Litig.*, *supra*, 35 F.3d 1407 at 1425

### 4. The Rule 13b2-2 Claim Should Be Dismissed

The record flatly contradicts that Mr. Mona knowingly made any false statements to an accountant in connection with a required audit or public filing. (*See* Sections II.A.3 and II.B.3, *supra*). That alone is sufficient to dismiss this claim.

In addition, the SEC's contention that its pleading "simply tracks the language of the statute" captures why it is deficient. (Opp. at 18.) The SEC does not explain how or why the "charging language" fits in with the required elements of the statute. By simply tracking the statute's language—which is written in the disjunctive—how and why the alleged misconduct specifically violated the law at issue is left to guesswork. That is not sufficient under Federal Rule 9(b)'s heightened pleading standard. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

### 5. The Rule 13a-14 Claim Should Be Dismissed

The SEC devotes the entirety of its Opposition on this point to establish that a separate cause of action under Rule 13a-14 may be maintained in the abstract. Even so, this claim cannot hold up in light of the facts presented here.

As discussed above (*see* Section II.A.1 and 2) and in the Motion (Mot. at 9-13), the

10

Forms 10-Q at issue fairly presented the financial position of the Company, and certainly did so to the best of Mr. Mona's knowledge at the time they were certified, which is all that is required. In addition, once an independent valuation of PhytoSphere was obtained in October of 2013, the Company immediately amended its financials in the Q3 Form 10-Q (filed the following month) to reflect an impairment. Because there was nothing illegal about the contents of CannaVEST's Forms 10-Qs, Mr. Mona did nothing wrong by certifying these filings.

### 6. The SOX 304 Claim Should Be Dismissed

The absurdity of this claim is best illustrated by the fact that it is based on Mr. Mona's alleged receipt of a $10,000 holiday bonus at the end of 2013. (Cplt. ¶88, Opp. at 20.) The SEC does not claim that Mr. Mona profited by selling CannaVEST stock (because he did not) or that he profited in any other manner (because he did not) from the alleged $27 million overvaluation of PhytoSphere assets.

The SEC takes issue with *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223 (9th Cir. 2008) because it was brought by a "plaintiff shareholder," but then cites two cases—*Kogan v. Robinson*, 432 F. Supp. 2d 1075 (S.D. Cal. 2006) and *Pireli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortgage Ass'n v. Raines*, 534 F.3d 779 (D.C. Cir. 2008)—that also involved private (i.e., non-SEC) plaintiffs. (Opp. at 20-21.) Like *Digimarc*, these cases held that SOX 304 does not create a private right of action, mentioning in dicta that the SEC may "enforce the statute" (*Kogan* at 1082) and "sue the CEO and CFO" (*Pireli* at 793).[4] And in *S.E.C. v. Jasper*, 883 F. Supp. 2d 915 (N.D. Cal. 2010), the court ordered forfeiture of certain bonuses and stock sale profits pursuant to a motion. *See id.* at 932. There was no indication that the SEC asserted a standalone SOX 304 claim in its complaint. Similarly, *S.E.C. v. Jensen*, 835 F.3d 1100 (9th Cir. 2016) does not establish that the SEC may maintain a cause of action for a SOX 304 violation; it says that the SEC may seek disgorgement, as a remedy, from CEOs and CFOs under SOX 304

---

[4] *Pireli* has since been abrogated by the Supreme Court and is no longer good law. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553 (2017).

even if the filing of a restatement is not triggered by those officers' misconduct. *Id.* at 1115-16. Indeed, "[d]isgorgement is permissible relief for a valid claim of violation of the securities laws; but disgorgement is not a claim in itself." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1478 (2d Cir. 1996).

The SEC's attempt to distinguish *S.E.C. v. Shanahan*, 624 F. Supp. 2d 1072 (E.D. Mo. 2008) and *In re Cree, Inc. Sec. Litig.*, 2005 WL 1847004 (M.D.N.C. Aug. 2, 2005) is also off base. (Opp. at 21.) First, the SEC omits part of the holding in *Shanahan* where the Court held that "before penalties may be imposed, an issuer must be compelled or ordered to prepare a financial restatement, **and** must actually file the restatement." *Id.* at 1078 (emphasis added). And the *Cree, Inc.* Court found that while certain disclosures in a Form 10-K were likely not restatements, the fact that the company was not required to restate was dispositive. *See* 2005 WL 1847004 at *15 ("This discussion is likely not a restatement at all, but in any case the Company was not required by any authority to issue it."). That no restatements were filed in these cases is irrelevant and does not dilute their holdings.

Finally, contrary to the SEC's argument, the SEC has not alleged in paragraph 50 of the Complaint (or in paragraphs 47-49) that CannaVEST was "required" to restate its Forms 10-Q for the first through third quarters of 2013 (Opp. at 20), which presumably explains its attempt to downplay this prerequisite.

### III.  CONCLUSION

For all of the foregoing reasons, and for those stated in Defendants' Motion, the Complaint should be dismissed as to both Defendants. Alternatively, the Court should order a more definite statement as to all claims alleged in the Complaint.

DATED: September 12, 2017              PROCOPIO, CORY, HARGREAVES &
                                                            SAVITCH LLP

                                                      By:  */s/ S. Todd Neal*
                                                            S. Todd Neal
                                                            Alex G. Brizolis
                                                            Attorneys for Defendants CannaVEST
                                                            Corp. a/k/a CV Sciences, Inc. and
                                                            Michael J. Mona, Jr.

## DECLARATION OF SERVICE

I hereby certify that on September 12, 2017, I electronically filed the foregoing through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth in the service list obtained from this Court on the Electronic Mail Notice List.

By: */s/ S. Todd Neal*
S. Todd Neal